## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JULIE K. TURNER,        ) | |
|        ) | |
|       **Plaintiff,**        ) | |
|        ) | **CIVIL ACTION** |
| **v.**        ) | |
|        ) | **No. 11-1027-JWL** |
|        ) | |
| **MICHAEL J. ASTRUE,**        ) | |
| **Commissioner of Social Security,**        ) | |
|        ) | |
|       **Defendant.**        ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Commissioner's evaluation of the medical and other source opinions, the court ORDERS that the decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

## I.     Background

Plaintiff applied for DIB on December 22, 2006, alleging disability beginning September 14, 2006. (R. 18, 76-80). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 18, 50-51, 63). Plaintiff's request was granted, and Plaintiff appeared without representation for a hearing before ALJ Charles Headrick on January 21, 2009. (R. 18, 27, 28). At the hearing Plaintiff waived her right to representation, and testimony was taken from Plaintiff and from a vocational expert. (R. 18, 26-49). On March 24, 2009, ALJ Headrick issued a decision finding that Plaintiff has the residual functional capacity (RFC) for a range of light work limited by an inability to perform "work that requires understanding, remembering, or carrying out detailed or complex job tasks or more than minimal contact with the general public." (R. 21). Based upon this RFC, the ALJ found that Plaintiff is able to perform her past relevant work as a temporary worker, or that alternatively, jobs exist in significant numbers in the national economy that Plaintiff can perform. (R. 23).

After the ALJ issued his decision, Plaintiff secured the services of counsel, requested Appeals Council review of the ALJ's decision, and submitted additional evidence to the Appeals Council for its consideration. (R. 9-14, 327-42). The Appeals Council issued an order making the additional evidence a part of the administrative record and considered that evidence in deciding whether to review the decision, but found that the evidence did not provide a basis to change the ALJ's decision, and denied the request for review. (R. 1-5). Therefore, the ALJ's decision is the final decision of the

Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff

now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. § 404.1520 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

4

1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe

impairment(s), and whether the severity of her impairment(s) meets or equals the severity

of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses

claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment

is used at both step four and step five of the sequential evaluation process.  Id.

    The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform her past relevant work; and whether, when

considering vocational factors of age, education, and work experience, claimant is able to

perform other work.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps

one through four the burden is on claimant to prove a disability that prevents performance

of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182,

1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to

the Commissioner to show that there are jobs in the economy within Plaintiff's capability.

Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

    Plaintiff made two allegations of error in the ALJ's decision.  She argued that the

ALJ improperly weighed the opinions of the medical source providers, namely Mr. Eldred

and Dr. Halfaker; and failed to perform a proper determination regarding the credibility of

Plaintiff's allegations of symptoms resulting from her impairments.  The Commissioner

responded to Plaintiff's brief, and argued that substantial evidence supports the ALJ's RFC assessment, including his consideration of the credibility of Plaintiff's allegations, his evaluation of the medical evidence, and his consideration of Mr. Eldred's report. The court finds that remand is necessary because the ALJ erred in evaluating the opinion evidence. Therefore, it need not consider Plaintiff's credibility arguments. Plaintiff may make those arguments to the Commissioner on remand.

## III.   Evaluation of Opinion Evidence

Plaintiff argues that Mr. Eldred, who is a certified Vocational Rehabilitation Counselor and was allegedly a medical source provider to Plaintiff, thoroughly reviewed Plaintiff's medical records (including the report of Dr. Halfaker, a nontreating psychologist who prepared a "Comprehensive Neuropsychological Assessment" report regarding Plaintiff), and that Mr. Eldred prepared a "Vocational Rehabilitation Evaluation" report in which he concluded both that "psychological restrictions hinder [Plaintiff] from working in competitive employment," and that "she would not now be employed if it weren't for the benevolence of an understanding employer." (Pl. Br. 2) (quoting (R. 105)). She argues that the ALJ erred when he ignored Mr. Eldred's report because an ALJ must consider every medical opinion; and that the ALJ should have considered Mr. Eldred's opinion as an "other source" opinion, and evaluated it in accordance with the Goatcher factors for evaluating medical opinions. Id. (citing

Bowman, 511 F.3d at 1273-74; Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003);

and Soc. Sec. Rulings (SSR) 06-03p, 96-5p, and 84-25).

She acknowledges that the ALJ referenced Dr. Halfaker's report, but argues that

he failed to summarize Dr. Halfaker's opinion properly, failed to provide a relative

weighing of the opinions of Dr. Halfaker and Mr. Eldred against the medical opinions of

the "state agency reviewing experts" (state agency nonexamining physicians and

psychologists), and failed to explain the basis for the weight given, and why the opinion

of Dr. Halfaker was not adopted.  (Pl. Br. 2-3).  Finally, she argues that the "state agency

reviewers'" opinions are internally inconsistent, and that the ALJ did not recognize or

resolve the inconsistency and, in fact, adopted the inconsistent limitation himself.  Id. at 3.

The Commissioner argues that the ALJ properly considered the objective medical

evidence in assessing Plaintiff's RFC.  (Comm'r Br. 6-13).  He points to medical opinions

of Dr. Halfaker, Dr. Cole (a nontreating psychologist who prepared a report for the state

agency), and "state agency psychological consultants"[1] (state agency nonexamining

psychologists) which were cited by the ALJ, and argues that these opinions support the

---

[1]The court notes that the "state agency reviewing experts" and "state agency reviewers'" referred to by Plaintiff are the same individuals as the "state agency psychological consultants" referred to by the Commissioner.  For clarity, the court uses the terms describing "acceptable medical sources" as defined in the regulations: "Treating source" - acceptable medical source who has provided treatment or examination in an ongoing treatment relationship, "Nontreating source" - acceptable medical source who has examined the claimant, but never had a treatment relationship, and "Nonexamining source" - acceptable medical source who has not examined the claimant, but provides a medical opinion.  20 C.F.R. § 404.1502.

7

ALJ's RFC assessment.  Id. 7-9.  The Commissioner argues that the opinions of the state agency nonexamining psychologists (and the mental RFC assessment of the ALJ) are not internally inconsistent.  He explains that "Moderate" "Difficulties in Maintaining Concentration, Persistence or Pace" in the "B" criteria of the mental listings (R. 313) does not necessarily imply limitations in "the ability to maintain attention and concentration for extended periods," because that ability is merely one of eight mental activities subsumed under the heading of "Sustained Concentration and Persistence" on the Commissioner's "Mental Residual Functional Capacity Assessment" form.  (R. 299-302).

With regard to Mr. Eldred's report, the Commissioner admits that the ALJ did not specifically discuss the report but argues that the ALJ did not ignore the report either. (Comm'r Br. 11).  He argues that the ALJ was not required to discuss the report and that the decision makes clear that the ALJ implicitly rejected the report and "properly credited multiple medical source opinions over the non-medical opinion of Mr. Eldred.  Id. (citing Wall, 561 F.3d at 1067; and SSR 06-03p).  The ALJ points to several factors in the evidence which in his view support a finding that Mr. Eldred's opinion should be rejected:  asserting that Mr. Eldred misinterpreted Dr. Halfaker's report; Mr. Eldred cited Plaintiff's subjective complaints rather than Dr. Halfaker's psychological findings; the ALJ found Plaintiff's complaints not credible; Mr. Eldred is not an "acceptable medical source," and is not qualified to render an opinion regarding Plaintiff's mental functioning; Mr. Eldred's opinion that Plaintiff is permanently and partially disabled is not entitled to

8

any special significance; and Plaintiff worked for two years after Mr. Eldred opined that she was disabled.  (Comm'r Br. 9-11).

## A.   Evaluation of Opinion Evidence

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations.  Id. § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011).  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at § 404.1527(d)(2-6); see also Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)

Determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing; plaintiff's RFC; whether a plaintiff can

9

do past relevant work; how age, education, and work experience apply; and whether a plaintiff is disabled, will not be given any special significance or controlling weight.  20 C.F.R. § 404.1527(e)(2 & 3); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011); SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 150, n.8 (Supp. 2011).

The Commissioner has provided Social Security Ruling (SSR) 06-03p to clarify "how we consider opinions from sources who are not 'acceptable medical sources.'" West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2011).  SSR 06-03p specifically includes rehabilitation counselors in its list of other "non-medical sources."  Id. at 329. The ruling explains that in accordance with 20 C.F.R. § 404.1527(b) "all relevant evidence in the case record" will be considered in deciding disability, and that all of the regulatory factors from 20 C.F.R. § 404.1527(d) "can be applied to opinion evidence from 'other sources.'"  Id. at 331-32.  The ruling provides further guidance for evaluating opinion evidence from "Non-Medical Sources:"

> Opinions from "non-medical sources" who have seen the individual in their professional capacity should be evaluated using the applicable [regulatory factors].  Not every factor for weighing opinion evidence will apply in every case.  The evaluation of an opinion from a "non-medical source" who has seen the individual in his or her professional capacity depends on the particular facts in each case.  Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

West's Soc. Sec. Reporting Serv., Rulings 332-33 (Supp. 2011).   The ruling goes on to explain that for opinions of non-medical professionals:

10

> it would be appropriate to consider such factors as the nature and extent of
> the relationship between the source and the individual, the source's
> qualifications, the source's area of specialty or expertise, the degree to
> which the source presents relevant evidence to support his or her opinion,
> whether the opinion is consistent with other evidence, and any other factors
> that tend to support or refute the opinion.

Id. at 333.

### B.      The ALJ's Evaluation of the Opinion Evidence

The ALJ's discussion of the medical evidence and evaluation of the opinions with

regard thereto consists of only four paragraphs in his eight-page decision.  In evaluating

whether Plaintiff has a severe impairment or combination of impairments at step two of

the sequential evaluation process, the ALJ summarized certain of the medical evidence:

> The claimant has a history of scoliosis and congenitally dislocated hips
> (Exhibit IF) [(R. 226)].  She also has a history of a motor vehicle accident
> on December 26, 2003, in which she suffered a head contusion (Exhibit 2F)
> [(R. 227-56)].  Physical examination on March 14, 2007, revealed the
> claimant had a waddling gait and loss of hip motion bilaterally (Exhibit 5F)
> [(R. 292-98)].
>
> Neuropsychological evaluation on January 10, 2005, was consistent with a
> cognitive disorder and adjustment disorder (Exhibit 2F) [(R. 227-56)].
> Psychological evaluation on February 28, 2007, was consistent with an
> adjustment disorder (Exhibit 4F) [(R. 287-91)].

(R. 20).

At the end of his RFC analysis, the ALJ summarized additional medical evidence,

some medical opinions, and his evaluation thereof:

> Although the claimant alleges mental deficiencies, Wechsler Adult
> Intelligence Scale - Third Edition (WAIS-III) testing on January 10, 2005,
> revealed a verbal IQ of 92, performance IQ of 91, and full scale IQ of 91,

placing the claimant in the average range of intellectual functioning (Exhibit 2F, page 16) [(R. 242)]. Dr. Halfaker estimated the claimant's global assessment of functioning (GAF) at 61, indicating only mild symptoms (Exhibit 2F, page 29) [(R. 255)]. On February 28, 2007, Dr. Cole stated that the claimant could perform simple tasks, should not have frequent public contact, and could adapt to a simple workplace environment (Exhibit 4F) [(R. 287-91)].

The Administrative Law Judge does not discount all of the claimant's complaints. However, the claimant's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the previously mentioned restrictions. The claimant's daily activities are consistent with the performance of light work. Given the objective medical evidence in the record, the Administrative Law Judge finds that the claimant's residual functional capacity is reasonable, and that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms. Two medical experts with the State Agency determined that the claimant could perform light work (Exhibits 8F and 10F) [(R. 317-24, 326)]. Two other medical experts with the State Agency determined that the claimant could perform simple task[s] on a routine basis; relate to supervisors and coworkers for work purposes; [and] adapt to simple work situations, but would have difficulty interacting with the general public (Exhibits 6F and 9F) [(R. 299-302, 325)]. The Administrative Law Judge concurs with these opinions.

(R. 22-23).

## C.   Analysis

With regard to Dr. Halfaker's "Comprehensive Neuropsychological Assessment," the ALJ noted that it was "consistent with a cognitive disorder and adjustment disorder" (R. 20), that it placed Plaintiff within the average range of intellectual functioning, and that Dr. Halfaker assigned a GAF of 61, indicating only mild symptoms. (R. 22). However, Dr. Halfaker also noted that "there has likely been a functional decline in her ability to pay attention and concentrate" (R. 252), that "her complaints of memory

problems are likely attributable to relative weakness in attention and concentration," and that "it is thought that she is experiencing features of a persistent postconcussional disorder." (R. 253). None of these deficits was mentioned by the ALJ. By themselves, these omissions are likely harmless, because they do not immediately suggest problems of disabling severity. However, they are not by themselves.

The record also contains the "Vocational Rehabilitation Evaluation" of Mr. Eldred. (R. 87-126). In that report, Mr. Eldred noted that Plaintiff's "concentration and memory have been lessened due to her head injury and would likely cause her difficulties in regard to future training for another occupation." (R. 104). Based in large part on Dr. Halfaker's evaluation and report, Mr. Eldred found that Plaintiff's "psychological restrictions hinder her from working in competitive employment," and found her "permanently and partially disabled when it comes to competitive gainful employment." (R. 105). Yet, the ALJ made no mention of Mr. Eldred's findings and did not even cite to his report.

Contrary to Plaintiff's assertion, Mr. Eldred is not a "medical source provider." (Pl. Br. 2). However, he is a rehabilitation counselor, and as such, is an "other, non-medical source" professional within the meaning of SSR 06-03p. West's Soc. Sec. Reporting Serv., Rulings 329 (Supp. 2011). Therefore, Mr. Eldred's opinion should be weighed, along with all of the other opinion evidence, in accordance with the regulatory factors for weighing opinion evidence. Id.

The Commissioner argues it was not error to fail to discuss Mr. Eldred's report because although the decision must demonstrate that the ALJ considered all of the evidence, he is not required to discuss every piece of evidence. (Comm'r Br. 11) (citing Wall, 561, F.3d at 1067; and Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007)). The authority to which the Commissioner appeals confirms that an ALJ need not discuss every piece of evidence. But, he must discuss the uncontroverted evidence he chooses not to rely upon, and any significantly probative evidence he decides to reject. Wall, 561 F.3d at 1067 (citing Frantz, 509 F.3d at 1303); see also, Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996) ("in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects"). In light of Dr. Halfaker's report, Mr. Eldred's report is significantly probative evidence that Plaintiff is disabled. Therefore, it was error not to discuss the report.

In his brief, the Commissioner also points to record evidence which in his view supports a finding that Mr. Eldred's opinion should be rejected, and argues that the ALJ's decision should be affirmed. (Comm'r Br. 9-11). However, none of the rationale provided in the Commissioner's Brief was suggested by the ALJ. Therefore, it is merely post hoc rationalization suggested by the Commissioner, and may not be relied upon by the court to affirm the decision. An ALJ's decision should be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir.

2004).  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against post hoc justification of administrative action.  Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).

Moreover, the decision does not provide any relative weighing of each of the opinions, and an explanation of the relative weight accorded to them.  It appears that the ALJ provided a very brief summary of the salient points of several of the medical opinions, selected certain opinions with which he agreed, and based his RFC assessment on those opinions.

The record contains no treating source opinion which might be accorded controlling weight, so it became necessary to weigh all of the opinion evidence in accordance with the regulatory factors, resolve any ambiguities, and explain the relative weight accorded each opinion and the reasons for that weight.  Yet, there is no indication in the decision that the ALJ engaged in any such relative weighing of the opinions.

This error is likely attributable to the ALJ's failure to discuss the effect of Mr. Eldred's report on the disability decision.  The decision reflects the ALJ's apparent view

15

that all of the medical opinions were consistent, that there were no inconsistencies or ambiguities to resolve, and that there was no need to explain the relative weight assigned each opinion.  On remand, the Commissioner must consider and evaluate Mr. Eldred's report, weigh all of the opinion evidence in accordance with the regulatory factors, and explain the weight accorded each opinion, and the reasons for that weight, based upon the record evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

Dated this 16th day of February 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

16